**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| SHAWN GADSON, MYTRENDS INC., and MILOSAVLJEVICH INTERNATIONAL, LLC, individually and on behalf of others similarly situated, | ) ) ) ) | No. 1:23-CV-02977 |
|  | ) |  |
| v.            Plaintiffs, | ) | Judge Edmond E. Chang |
|  | ) |  |
| STELLE CORPORATION and STEFAN RADOSAVLJEVIC, | ) ) | |
|  | ) |  |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

The Plaintiffs in this case—Shawn Gadson, Mytrends, Inc., and Milosavljevich International—are an independent truck driver and two small companies formed by independent truck drivers. R. 30, Third Am. Compl. ¶¶ 4–6.[1] They accuse a shipping company, Stelle Corporation, of engaging in deceptive business practices. Specifically, the Plaintiffs allege that Stelle shorted the drivers in paying them what was owed for transporting cargo by altering key shipping records. *Id.* ¶¶ 24–30, 36. Upon discovering the deception, the Plaintiffs sued Stelle for breach of contract and common law fraud, and sued Stelle and its president, Stefan Radosavljevic, for violating the Truth in Leasing Act, 49 U.S.C. § 14707. *Id.* ¶¶ 51–74.[2] Stelle and its president now move

---

[1]Citations to the record are "R." followed by the docket entry number and, if needed, a page or paragraph number.

[2]This Court has federal-question jurisdiction over the Truth in Leasing Act claims, 49 U.S.C. § 14704(a)(2). 28 U.S.C. § 1331. Supplemental jurisdiction applies to the state law claims. 28 U.S.C. § 1367(a). Subject matter jurisdiction is also proper under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because the amount in controversy exceeds $5 million, and minimal diversity applies: Gadson is a citizen of South Carolina, and Stelle

to dismiss certain counts against them. R. 33, Corporate Def. Mot.; R. 44, Individual Def. Mot. For the reasons explained in this Opinion, the partial motions to dismiss are denied.

## I. Background

For the purposes of this motion, the Court accepts as true the allegations in the Third Amended Complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Stelle Corporation is an Illinois-based shipping company that hired truck drivers—who either own or lease their own trucks—to haul and deliver goods. Third Am. Compl. ¶¶ 1, 7–8; *id.* at 1 n.1. Stelle got its business from freight brokers, who connected distributors of goods (think Amazon, for example) with shipping companies like Stelle. *Id.* ¶¶ 2, 24. The distributors made gross payments to Stelle, and Stelle in turn paid the drivers a percentage—agreed on in advance by Stelle and the drivers—of the gross payment received by Stelle. *Id.* ¶¶ 2, 22.

The Plaintiffs in this case are all semi-truck owners that entered into agreements with Stelle to haul goods. Third Am. Compl. ¶¶ 4–6, 21. Shawn Gadson is a licensed commercial truck driver from South Carolina and hauled goods for Stelle between December 2021 and June 2022. *Id.* ¶ 4. Mytrends is a Florida trucking corporation. *Id.* ¶ 5. Its principal, Nikola Spadier, is a licensed commercial truck driver and transported goods for Stelle between July 2019 and December 2019. *Id.* Milosavljevich International is a Florida limited liability company. *Id.* ¶ 6. Its principal,

---

Corporation is an Illinois corporation with its principal place of business in Illinois. Third Am. Compl. ¶¶ 4, 7.

2

Ivan Milosavljevich, is a licensed commercial truck driver and drove the company's truck for Stelle between May 2019 and December 2019. *Id.*

Gadson alleges that, in November 2021, he applied to drive for Stelle through its website after seeing an advertisement announcing the job. *Id.* ¶ 15. After applying, Gadson received a call from a Stelle employee explaining that Stelle would pay him a percentage of the gross receipts for each load that he transported and gave Gadson other details about the company's orientation at Stelle headquarters. *Id.* ¶ 16. Gadson attended the orientation later that month. *See id.* ¶¶ 16–17. There, he signed a contract with Stelle, memorializing its promise to pay Gadson 80% of the gross receipts for each load, and completed other onboarding paperwork presented to him on Stelle letterhead. *Id.* ¶¶ 18–19. Gadson also agreed to pay his fuel expenses, and a $1,000 weekly fee called "Stelle Corporation Owner Operator Program." *Id.* ¶¶ 18, 31; R. 30-6, Third Am. Compl. Exh. 6.

Before transporting an assigned load, Stelle dispatchers would contact Gadson and tell him what the price would be for the particular load; based on that gross price, Gadson could then figure out, using the 80% agreement, what he would receive for the load. *Id.* ¶ 22. For some of the loads, Stelle's dispatchers would send Gadson a "load confirmation sheet" issued by the freight brokers purportedly reflecting the load prices. *See id.* ¶¶ 29–30. But Gadson eventually learned that the load prices quoted to Stelle were, in reality, *higher* than the amounts that Stelle was telling Gadson. *Id.* ¶¶ 27–30. For example, the purported freight broker's load confirmation sheet that Stelle provided to Gadson for a shipment in Pennsylvania showed a price of $1,500.

3

*Id.* ¶¶ 29, 32, 35; R. 30-4, Confirmation Sheet attached to Email of Feb. 22, 2022. Gadson later learned from the freight broker (a company called Transfix) that the load price was actually $2,200. *Id.* ¶ 29. The same thing happened for a shipment that Gadson hauled from South Carolina to Wisconsin. *Id.* ¶ 30. Gadson alleges that Stelle emailed him a confirmation sheet with a load cost of $3,000, but he later learned that the real load price was $3,800. *Id.*; R. 30-5, Confirmation Sheet attached to Email of Feb. 22, 2022.

Similar shortfalls were inflicted on the other two Plaintiffs. Mytrends and Milosavljevich entered into fixed-percentage contracts (for them, 88% of the load price) with Stelle, specifically to deliver Amazon-distributed goods. Third Am. Compl. ¶¶ 20, 23. Though Gadson at least received some confirmation sheets, Stelle did not provide any confirmation sheets to Mytrends and Milosavljevich, in alleged violation of the Truth in Leasing Act's requirements. *Id.* ¶ 25; 49 C.F.R. § 376.12(g) (requiring the parties to adhere to the terms of the lease). Instead, Stelle provided them with "settlement statements," which purported to show the gross revenue received by Stelle for each load, but in fact showed a false, lower number. *Id.* ¶ 34; R. 30-3. Third Am. Compl. Exh. 3. All three Plaintiffs allege that they would not have transported the assigned loads at the stated price had they known that the true price per load was really higher. *Id.* ¶¶ 29–30, 36.

Stelle's alleged wrongdoing does not end there. The Plaintiffs also allege that Stelle deducted money from the Plaintiffs' escrow accounts and maintenance accounts (that is, accounts that were supposed to be used to pay Stelle for fuel and other

expenses), but never repaid the amounts to the Plaintiffs after they stopped driving for Stelle even though Stelle had no basis, contractual or otherwise, for keeping this money. *Id.* ¶¶ 38–39, 41. Nor did Stelle pay interest on any of the escrow deductions that it took from the Plaintiffs' pay. *Id.* ¶ 40.

The Plaintiffs allege that Stefan Radosavljevic, Stelle's president, was the mastermind behind the schemes. *Id.* ¶¶ 42–43. They claim that Radosavljevic was aware of—and aided, abetted, and encouraged—Stelle's wrongful financial practices even though he had the authority to stop the misdeeds. *Id.* In fact, at one point, driver Nikola Spadijer confronted Radosavljevic and asked Radosavljevic to show him the amount of money that Stelle received from Amazon for each load—but Radosavljevic refused. *Id.* ¶ 44.

So the Plaintiffs have brought this proposed class action against Stelle Corporation and Radosavljevic, alleging that Stelle breached its contracts with all the Plaintiffs; that Stelle defrauded Gadson; and that Stelle violated all of the Plaintiffs' rights under the Truth in Leasing Act, 49 U.S.C. § 14704, as did Radosavljevic, by aiding and abetting the company's wrongdoings. Third Am. Compl. ¶¶ 51–74. Radosavljevic now moves to dismiss Count 2 of the Third Amended Complaint, arguing that the Leasing Act only supplies a cause of action against corporations—but not individuals—for violations of the Act. Individual Def. Mot. to Dismiss. For its part, Stelle moves to dismiss Count 3, arguing that Gadson did not allege facts unique to the fraud claim to set the claim apart from the breach of contract claim. Corporate Def. Mot. to Dismiss. For the reasons below, the motions to dismiss are denied.

## II. Legal Standard

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). A "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).[3] These allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And the allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 679.

Ordinarily, under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). But claims alleging fraud must also satisfy the heightened pleading requirement of Federal Rule of Civil Procedure Rule 9(b), which requires that "[i]n alleging fraud or mistake, a party must state *with particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). Thus, Rule 9(b) requires that [party]'s complaint "state the identity

---

[3] This Opinion uses (cleaned up) to indicate that internal quotation marks, alterations, and citations have been omitted from quotations. *See* Jack Metzler, *Cleaning Up Quotations*, 18 Journal of Appellate Practice and Process 143 (2017).

of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (cleaned up). Put differently, her complaint "must describe the who, what, when, where, and how of the fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–42 (7th Cir. 2011).

### III. Analysis

### A. Individual Liability of Radosavljevic (Count 2)

In Count 2, the Plaintiffs sue Radosavljevic (as well as Stelle) for violating their rights under the Truth in Leasing Act. Third Am. Compl. ¶¶ 57–65; 49 U.S.C. §§ 14102, 14704(a)(2). Given the importance of the trucking industry to the Nation's economy, Congress enacted the Leasing Act "'to promote full disclosure between the carrier and owner-operator in the leasing contract, to promote stability and economic welfare of the independent trucker segment of the motor carrier industry, and to eliminate or reduce opportunities for skimming and other illegal practices.'" *Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 678 (7th Cir. 2022) (citing Lease and Interchange of Vehicles, 43 Fed. Reg 29812, 29812 (July 11, 1978)). The Leasing Act designates the Department of Transportation to oversee the relationship between motor carriers (like Stelle)[4] and owner-operator truck drivers (like the Plaintiffs). Within the

---

[4]Stelle is a federally regulated authorized motor carrier. 49 C.F.R. § 376.2(a); Third Am. Compl. ¶¶ 7–8. R. 35, Pl.'s Resp. to Corporate Def. Mot. to at 1.

Department of Transportation, the Federal Motor Carrier Safety Administration imposes and enforces regulations on the lease agreements between the parties. *See* 49 U.S.C. § 14102(a); 49 C.F.R. § 376.12.

As a basic tenet of trucking-transportation governance, a key regulation sets forth "required lease provisions" for every lease between authorized carriers (like Stelle) and the operators of trucks (like the Plaintiff-drivers). 49 C.F.R. § 376.12. One required provision that must be in every lease is a clear statement of the compensation to be paid to the truck operator, whether calculated as a percentage of gross revenue, a flat rate per mile, or any other method:

> (d) Compensation to be specified. The amount to be paid by the authorized carrier for equipment and driver's services shall be *clearly stated* on the face of the lease or in an addendum which is attached to the lease. … The amount to be paid may be expressed as a percentage of gross revenue, a flat rate per mile, a variable rate …, or by any other method of compensation mutually agreed upon by the parties to the lease. …

49 C.F.R. § 376.12(d) (emphasis added). But the regulation goes further, beyond just requiring that leases set forth the overall compensation structure. Section 376.12(g) also requires that leases contain a provision under which the carrier will give the truck operator—for each specific shipment—a copy of the "freight bill" (or similar record) if compensation is based on a percentage of gross revenue:

> (g) Copies of freight bill or other form of freight document. When a lessor's revenue is based on a percentage of the gross revenue for a shipment, the lease must specify that the authorized carrier *will give the lessor, before or at the time of settlement, a copy of the rated freight bill*, or, in the case of contract carriers, any other form of documentation actually used for a shipment containing the same information that would appear on a rated freight bill. …

8

49 C.F.R. § 376.12(g) (emphasis added). Simply put, motor carriers are obligated to write into the leases the compensation to be paid to the truck drivers, and if that compensation is expressed as a percentage of gross revenue, then motor carriers must also give a copy of the freight bill to the drivers.

In addition to suing Stelle Corporation (which has not moved to dismiss the Leasing Act claim), the Plaintiffs also have sued Stelle's president, Stefan Radosavljevic, for allegedly encouraging, aiding, and abetting Stelle's wrongdoings. Third Am. Compl. ¶¶ 42–43, 64. As a factual matter, the Plaintiffs maintain that Radosavljevic was the decisionmaker behind Stelle's decision to pay the Plaintiffs less than what was owed; that at the very least he had the authority to stop the violations but allowed them to continue, and that he refused to respond to questions when confronted about the shortfall in compensation. *Id.* ¶¶ 42–44.

The Plaintiffs see their cause of action against Radosavljevic as rooted in the Leasing Act's aiding-and-abetting rule, 49 C.F.R. § 390.13. R. 47, Pl.'s Resp. to Individual Def. Mot. at 3. Section 390.13 bars any "person" from aiding and abetting of regulatory violations: "No *person* shall aid, abet, encourage, or require a motor carrier or its employees to violate the rules of this chapter." 49 C.F.R. § 390.13 (emphasis added). And the Plaintiffs point out that, in turn, the term "person" is defined (for the pertinent subchapter) as any "*individual*, partnership, association, corporation, business trust, or any other organized group of individuals." *Id.* § 390.5 (emphasis added). Section 390.13 is in Subchapter B of Chapter III of Leasing Act regulations, so that

9

means that an individual—like Radosavljevic—is covered by the ban on aiding and abetting. Pl.'s Resp. to Individual Def. Mot. at 3 (citing 49 C.F.R. § 390.13).

Radosavljevic counters that the Plaintiffs mistakenly rely on the Leasing Act's *regulations*, rather than the *statute* itself, as a basis for liability. R. 50, Individual Def. Reply at 1–4. Radosavljevic contends that individuals are not subject to liability under the Leasing Act because the statute creates liability only against a "carrier" or "broker," which (according to him) can only be corporate or organizational *entities*. Individual Def. Mot. at 4–6 (citing 49 U.S.C. § 14704(a)(2)). Without a statutory basis for individual-person liability, Radosavljevic argues, the Plaintiffs cannot sue him personally for damages because only statutes—not regulations—provide the authority to sue. Individual Def. Mot. at 4–5 (analyzing 49 U.S.C. § 14704).

To resolve this dispute over statutory interpretation, the Court starts "with the text of the statute to ascertain its plain meaning." *United States v. Melvin*, 948 F.3d 848, 851 (7th Cir. 2020) (cleaned up). The text and design of the statute may assist with the determination of the law's plain meaning. *United States v. Berkos*, 543 F.3d 392, 396 (7th Cir. 2008) (citing *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291 (1988)). Identical words used in different parts of the same statute are generally presumed to have the same meaning. *United States v. Achbani*, 507 F.3d 598, 601 (7th Cir. 2007). And courts should avoid interpreting a statute in a way that renders a word or phrase redundant or meaningless. *Berkos*, 543 F.3d at 396–97 (citing *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 574–75 (1995)).

10

Radosavljevic acknowledges (and, indeed, affirmatively argues) that the statutory cause of action at issue is created by 49 U.S.C. § 14704(a)(2). Individual Mot. to Dismiss at 4.[5] Section 14704(a)(2) says:

> A *carrier* or broker providing transportation or service subject to jurisdiction under chapter 135 is liable for damages sustained by a person as a result of an act or omission of that carrier or broker in violation of this part.

§ 14704(a)(2) (emphasis added). Radosavljevic contends that a "carrier" (or, for that matter, a "broker") can only be a corporate entity of some sort, not an individual person. But the pertinent statutory definitions refute this contention. The term "carrier"

---

[5]Although the parties acknowledge that Section 14704(a)(2) creates the statutory cause of action, Third Am. Compl. ¶ 65, Individual Mot. to Dismiss at 4, the parties then spend most of their time analyzing the implementing regulations. The analysis of Section 14704(a)(2) set forth in this Opinion is not explicitly presented by either side, so it is worth pausing to consider why it is appropriate for the Court to strike this path given the general "principle of party presentation," *United States v. Sineneng-Smith*, 590 U.S. 371, 375 (2020). "In both civil and criminal cases, in the first instance and on appeal …, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Id.* (cleaned up). The principle, however, is not "ironclad." *Id.* at 376. In *Sineneng-Smith*, the Ninth Circuit on its own injected into the case—for the first time on appeal—a constitutional challenge to a criminal statute on the basis of First Amendment overbreadth. *Id.* at 374. In stark contrast, both sides here have already identified the relevant statute and have presented the question of whether the statutory cause of action authorizes claims against individual persons. It is one thing to inject a new issue of law into a case; it is quite another to engage in *de novo* analysis (which would be the standard of appellate review anyway) of a question of statutory interpretation *already* presented by the parties. On pure issues of law, it would be odd to be confined to the specific *reasons* why a law should be interpreted one way or the other, as distinct from being confined to whether the issue was raised at all. After all, litigants sometimes miss advancing arguments based on statutory tools of construction that are themselves required by Supreme Court precedent to be deployed when interpreting a statue. On pure questions of law like this, then, judges "are not wallflowers or potted plants." *Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1045 (7th Cir. 1988). What's more, this case is at the pleading stage, rather than on appeal after a jury trial, which was the procedural posture in *Sineneng-Smith*. *See id.* at 377–78. All in all, a *de novo* approach to statutory interpretation of an issue already presented by both sides is faithful to serving as a "neutral arbiter of matters the parties present," *Sineneng-Smith*, 590 U.S. at 375 (cleaned up).

is defined as a "motor carrier, a water carrier, and a freight forwarder." 49 U.S.C. § 13102(3). As relevant here, the governing statute goes on to define a "motor carrier" as "a *person* providing motor vehicle transportation for compensation. § 13102(14) (emphasis added). So even the plain text of the governing definitional section uses the term "person" in the definition of motor carrier. Even more explicitly, the statute defines a "person" to take on the meaning in the generally applicable Dictionary Act, 1 U.S.C. § 1. 49 U.S.C. § 13102(18) (incorporating by reference the meaning of "person" under 1 U.S.C. § 1). Section 1 of Title 1 says that "person" includes corporate and organizational entities "as well as *individuals*." 1 U.S.C. § 1 (emphasis added). By those explicit definitions, then, an individual person may be held liable under 49 U.S.C. § 14704(a)(2).

To complete the analysis of § 14704(a)(2), remember that the cause of action covers violations of "this part." § 14704(a)(2). The  pertinent "part" of the statutory framework is Part B of the pertinent Subtitle, which in turn covers Chapters 131 through 149—and § 14704 is codified in Chapter 147. On the topic of compensation in particular, § 14102(a)(1)—also codified in Part B—authorizes the Transportation Secretary to require that leases specify the compensation to be paid by the motor carrier:

> **(a) General authority of Secretary.**—The Secretary may require a motor carrier providing transportation subject to jurisdiction under subchapter I of chapter 135 that uses motor vehicles not owned by it to transport property under an arrangement with another party to—
>> (1) make the arrangement in writing signed by the parties *specifying its duration and the compensation to be paid* by the motor carrier ….

49 U.S.C. § 14102(a)(1) (emphasis added). As discussed earlier, the Transportation Secretary has indeed issued this requirement as 49 C.F.R. § 376.12(d) and (g), which require that carriers set forth the compensation in leases and disclose the freight bills to truck operators. So, here, the statutory cause of action in § 14704(a)(2) does cover the violations alleged by the Plaintiffs against Stelle and Radosavljevic.[6]

Lastly, moving on from the question of law (that is, whether the Leasing Act authorizes a claim against individual persons), the Plaintiffs in this case have sufficiently alleged—as a factual matter—that Radosavljevic is a motor carrier under § 14704(a)(2) and can be held directly liable for violating the statute while acting as Stelle's president. The Plaintiffs allege that Radosavljevic "was responsible for Stelle's illegal practice of underreporting the price of the load to drivers, failing to provide copies of the brokers' rate confirmations to drivers, and making unauthorized deductions from drivers' pay. *He* decided to pay Plaintiffs less than their contracts required. *He* had the authority to stop the illegal practices but allowed them to

---

[6]Other judges in this District have arrived at the same individual-person liability, though based on different analyses. In *King v. JDM Expedite, Inc.*, 2024 WL 3848569, at *8 (N.D. Ill. Aug. 16, 2024), for example, the district court approached the interpretation of the Leasing Act in much the same way as the Plaintiffs in this case. There, the district court focused on the statute's implementing regulations and held that 49 C.F.R. § 390.13, and the Circuit's precedent analyzing the regulation, "leave[] no room to doubt that plaintiff can sue for damages from [an individual defendant's] potential regulatory violations under 49 U.S.C. § 14704(a)(2)." *Id.* at *8. *King* relied on the Seventh Circuit's broad interpretation of § 390.13. *Id.* (citing *Schneider Nat'l, Inc.*, 43 F.4th 656, 678 (7th Cir. 2022)); *see also Dabecca Nat. Foods, Inc. v. RD Trucking, LLC*, 2015 WL 2444505, at *3 n.5 (N.D. Ill. May 20, 2015) (citing 49 U.S.C. § 13102(14) and 49 C.F.R. § 390.5) (defining the term "person" in the definitions of "motor carriers" in the Carmack Amendment, 49 U.S.C. § 14706(a)(1)).

continue." Third Am. Compl. ¶ 43 (emphases added). These allegations do more work than just alleging that Radosavljevic aided and abetted Stelle Corporation's fraud— the allegations go so far as describing Radosavljevic's specific, personal role. On these facts, Radosavljevic's motion must be dismissed. *Cf. Spaulding v. Abbot Lab'ys*, 2010 WL 4822894, at *6–7 (N.D. Ill. Nov. 22, 2010) (dismissing the complaint where plaintiffs merely alleged that the individual defendant was Chief Executive Officer and therefore had responsibility over compensation, without alleging personal knowledge or action).

## B. Common Law Fraud (Count 3)

The next question is whether Gadson sufficiently alleged a common law fraud claim against Stelle. To adequately state a claim for common law fraud, Gadson must allege that (1) Stelle made a false statement of material fact; (2) Stelle knew that the statement was false; (3) Stelle intended that the statement would induce Gadson to act; (4) Gadson relied on the truth of the statement; and (5) Gadson suffered damages that resulted from his reliance. *See Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996). It is true, as Stelle points out, that the allegations must be more "than reformulated allegations of a contractual breach. … [B]reach-of-contract allegations dressed up in the language of fraud … cannot support a statutory or common-law fraud claims." *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 395 (7th Cir. 2011) (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 844 (Ill. 2005)). This is true "even when the defendant systematically breaches many contracts across an entire prospective plaintiff class." *Comm. Bank of Trenton v. Schnuck Mkts., Inc.*,

14

887 F.3d 803, 822 (7th Cir. 2018) (cleaned up). But the mere existence of an underlying contract does not always doom a consumer-fraud claim based on the same factual foundation, *Gibson v. Albertsons Cos., Inc.*, 2024 WL 4514041, at *11 (N.D. Ill. Oct. 17, 2024).

Stelle argues that the fraud claim is "merely duplicative of the breach of contract claim." Corporate Def. Mot. at 6. Even though the two claims have some factual overlap, however, Gadson's allegations on the fraud claim go beyond a mere breach-of-contract claim. The contract claim against Stelle is more limited—Gadson alleges that "Stelle breached its contract with Plaintiffs by not paying them the agreed upon percentage of the real rate that brokers or shippers paid to Stelle." *Id.* ¶ 56. The fraud claim, in contrast, extends to Stelle allegedly making false and fraudulent statements to Gadson about the purported freight rates: Stelle altered the load confirmation sheets to make Gadson "falsely believe that Stelle was paying him in accordance with his work contract"; Gadson reasonably and justifiably relied on Stelle sending him accurate load confirmation sheets; and Gadson incurred damages in the form of underpayments. *Id.* ¶¶ 67–70, 72–74. When comparing the claims are side-by-side, it is clear that Gadson's fraud claim goes well beyond the contract claim.

Stelle's argument goes no further than the duplicity argument. Stelle does not address, for example, whether the Third Amended Complaint satisfied Civil Rule 9(b)'s heightened-pleading standard. Fed. R. Civ. P. 9(b); *see Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr.*, 631 F.3d at 441–42. Generally speaking, the complaint must describe the "who, what, when, where, and how" of the fraud, though the

required level of particularity will depend on the facts of the case. *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011). Even if Stelle had made a Rule 9(b) argument, when viewed in Gadson's favor, the alleged facts here would meet the heightened-pleading standard. Gadson specifically alleges the who, what, when, where, and how: Stelle Corporation disclosed bogus load costs with lower rates, then falsified load confirmation sheets to match their misrepresentation to induce the drivers to believe that their pay should be a certain price, allowing Stelle to keep the excess. The fraud claim remains intact.

## IV. Conclusion

For the reasons explained in this Opinion, Stelle Corporation's partial motion to dismiss and Radosavljevic's partial motion to dismiss are denied.

ENTERED:

      s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: March 24, 2025